7 A.3d 780 (2010)
416 N.J. Super. 594
Leonard L. FREDERICK, the Estate of Colette A. Frederick, Frances A. Frederick, Matthew F. Streib, Lauren A. Streib, John Sasser, III, Susan Sasser, Richard J. Lisco, Daria H. Lisco, Anthony Meola and Maria Meola, Plaintiffs-Appellants,
v.
Maxwell Baldwin SMITH, Holly Smith, Cantone Research, Inc., PNC Investments, J.J.B. Hilliard, W.L. Lyons, Inc., Atlantic Group Securities, Inc., and Rickel & Associates, Inc., Defendants, and
Merrill Lynch, Pierce, Fenner & Smith, Inc., Defendant-Respondent.
No. A-1620-09T2.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 2010.
Decided November 9, 2010.
*781 D'Alessandro & Jacovino, attorneys for appellants (Edward G. D'Alessandro, Jr., Florham Park, on the brief).
Bressler, Amery & Ross, attorneys for respondent (David J. Libowsky, Florham Park, on the brief).
Before Judges CUFF, FISHER and SIMONELLI.
The opinion of the court was delivered by FISHER, J.A.D.
Plaintiffs commenced these actions[1] alleging that defendant Maxwell Baldwin Smith (Smith) convinced them to invest in Healthcare Financial Partnership (HFP), a fictitious entity. As part of the fraud, Smith instructed plaintiffs to convey the invested funds to an account he maintained with defendant Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch). Because plaintiffs had no relationship with Merrill Lynch, and because Smith had no relationship with Merrill Lynch other than as owner of the account into which the funds were placed, we conclude that, as a matter of law, no duty should be imposed on Merrill Lynch to periodically examine the account's activities for indicia of fraud and, therefore, affirm the order dismissing the claim.
In April and June of 2009, these four separate actions were filed against Smith, *782 his wife Holly Smith, and several investment advisor firms, alleging Smith created and orchestrated a scheme to defraud them. After the actions were consolidated, Merrill Lynch moved for dismissal pursuant to Rule 4:6-2(e). Plaintiffs opposed the motion and cross-moved for an order compelling arbitration. Merrill Lynch's motion was granted and plaintiffs' cross-motion was denied on October 23, 2009. When the remaining issues in these actions were later resolved, plaintiffs filed this appeal, seeking our review of the order dismissing the negligence claims asserted against Merrill Lynch and the order denying plaintiffs' motion to compel arbitration.
A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if "the factual allegations are palpably insufficient to support a claim upon which relief can be granted." Rieder v. State Dep't of Transp., 221 N.J.Super. 547, 552, 535 A.2d 512 (App. Div.1987). This standard requires that "the pleading be searched in depth and with liberality to determine whether a cause of action can be gleaned even from an obscure statement." Seidenberg v. Summit Bank, 348 N.J.Super. 243, 250, 791 A.2d 1068 (App.Div.2002) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989)). The pleader is entitled to "the most favorable inferences which may be reasonably drawn from" the pleading's allegations, Rappaport v. Nichols, 31 N.J. 188, 193, 156 A.2d 1 (1959), and, in reviewing a Rule 4:6-2(e) dismissal, we apply the same standard, Seidenberg, supra, 348 N.J.Super. at 250, 791 A.2d 1068; Donato v. Moldow, 374 N.J.Super. 475, 483, 865 A.2d 711 (App.Div.2005).
As part of their negligence claims, plaintiffs alleged that Smith convinced them to invest in HFP, which he claimed was "a secure tax-free investment which paid a high level of interest through investment in a diversified portfolio of high yielding income projects." According to their complaints, plaintiffs collectively invested approximately $10 million in HFP over a number of years. Smith obtained these funds by instructing plaintiffs to make their checks payable to "Merrill Lynch A/C # 36641" or "directly to Merrill Lynch," misrepresenting to plaintiffs that Merrill Lynch was the security's underwriter. According to plaintiffs, the referenced account was a personal account Smith opened at Merrill Lynch "for the sole purpose of furthering the Ponzi scheme." Once plaintiffs' checks were deposited in Smith's personal Merrill Lynch account, Smith remitted to plaintiffs phony correspondence memorializing the deposit and then used the funds for his own benefit. By the time plaintiffs discovered what was happening, they had lost nearly their entire investments.
The complaints alleged that while Smith was orchestrating his fraud, he was employed by: defendant Hilliard W.L. Lyons, Inc., from 1999-2003; defendant PNC Investments from 2004-2005; and defendant Cantone Research, Inc., from 2005-2009. Plaintiffs do not allege Smith was ever employed by Merrill Lynch. Notwithstanding the lack of any relationship between Merrill Lynch and Smith or the lack of any relationship between plaintiffs and Merrill Lynch, plaintiffs alleged Merrill Lynch was negligent for failing to discover Smith's use of his Merrill Lynch account to perpetrate a fraud.[2] Plaintiffs acknowledged that ordinarily a bank only owes duties to its customers, but claimed that a fiduciary relationship was established in *783 this case because they wrote checks directly to Merrill Lynch when investing in HFP.
Although Judge W. Hunt Dumont mentioned that plaintiffs' claims "[did] have a certain superficial appeal,"[3] he interpreted the applicable law as limiting a brokerage firm's duty to only its customers and dismissed the negligence claims asserted by plaintiffs against Merrill Lynch. In appealing, plaintiffs argue that although a bank or brokerage firm does not typically owe a duty to non-customers, Merrill Lynch owed them a duty in this case because it "accepted more than $9 million of [p]laintiff[s'] money . . . by way of checks payable to Merrill Lynch."
Whether a duty should be imposed is a matter of law, Kernan v. One Washington Park Urban Renewal Associates, 154 N.J. 437, 445, 713 A.2d 411 (1998); Arvanitis v. Hios, 307 N.J.Super. 577, 581, 705 A.2d 355 (App.Div.1998), that poses "`a question of fairness'" involving "'a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution,'" Kelly v. Gwinnell, 96 N.J. 538, 544, 476 A.2d 1219 (1984) (quoting Goldberg v. Hous. Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)). In reviewing a trial judge's determination that a duty does or does not arise in a particular situation, we are bound neither by the trial judge's interpretation of the law nor the judge's view of the legal consequences of the alleged facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Although our courts have not previously considered whether a brokerage firm owes a duty towards non-customers in this context, our Supreme Court has expressed a "reluctance to impose a duty of care on banks in respect of a total stranger." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 403, 972 A.2d 1112 (2009); see also City Check Cashing v. Mfrs. Hanover Trust Co., 166 N.J. 49, 60, 764 A.2d 411 (2001).
The Court's decision in City Check Cashing is particularly instructive. There, a check cashing business was presented with a forged check appearing to have been marked certified by the defendant bank. Id. at 52-53, 764 A.2d 411. Before cashing the check, the manager contacted a bank representative who initially expressed concerns about the check's legitimacy and promised to look at it more closely. Id. at 53-54, 764 A.2d 411. Not hearing from the bank representative for several hours, the store manager cashed the check. Id. at 55, 764 A.2d 411. In finding no maintainable negligence claim against the bank, the Court held that "[a]bsent a special relationship, courts will typically bar claims of non-customers against banks." Id. at 60, 764 A.2d 411, That is, the Court held that absent some "agreement, undertaking or contract" between the parties, a bank does not owe a duty to a non-customer, id. at 62, 764 A.2d 411, explaining that "[i]n actions based on nonfeasance," there must be "some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act," id. at 59, 764 A.2d 411 (quoting W. Page Keeton et al., Prosser & Keeton on Torts § 56 at 374 (5th ed. 1984)). See also Pennsylvania Nat'l Turf Club v. Bank of W. Jersey, 158 *784 N.J.Super. 196, 203, 385 A.2d 932 (App. Div.), certif. denied, 77 N.J. 506, 391 A.2d 520 (1978).
Plaintiffs have not demonstrated why some other rule should apply to a brokerage firm with regard to an individual's personal brokerage account. Indeed, we are impressed by the fact that plaintiffs' theory appears never to have been accepted by any of the federal courts that have considered it; those federal courts, including the federal district court in this State, Riggs v. Schappell, 939 F.Supp. 321, 329-30 (D.N.J.1996), that have explored the issue, have held that a brokerage firm is under no obligation to be a fraud watchdog for non-customers. See In re Agape Litig., 681 F.Supp.2d 352, 361 (E.D.N.Y. 2010); Kolbeck v. LIT Am., 923 F.Supp. 557, 571-72 (S.D.N.Y.1996), aff'd, 152 F.3d 918 (2d Cir.1998); Guidry v. Bank of LaPlace, 740 F.Supp. 1208, 1218-19 (E.D.La.1990), aff'd as modified, 954 F.2d 278 (5th Cir.1992). The common theme in all these cases is that a duty arises only "when the broker does business with the plaintiff." Kolbeck, supra, 923 F.Supp. at 572 (S.D.N.Y.1996). That theme is consistent with the common law approach, expressed in Brunson and City Check Cashing, that precludes claims made by non-customers against banks.
In applying these principles, we conclude that the absence of any relationship between plaintiffs and Merrill Lynch precludes the imposition of a duty on Merrill Lynch to periodically or regularly police the personal account maintained by Smith for indicia of fraud. Furthermore, the fact that plaintiffs may have at times submitted checks directly to Merrill Lynch, as instructed by Smith, did not create a relationship where none previously existed. Merrill Lynch deposited the checks in Smith's account as directed; it issued no statements to plaintiffs and derived no financial benefit from the fact that checks may have been written directly to Merrill Lynch instead of Smith. In the absence of no greater nexus between plaintiffs and Merrill Lynch, or between Smith and Merrill Lynch, plaintiffs possessed no viable negligence claim against Merrill Lynch. Accordingly, the order of dismissal must be affirmed.[4]
We lastly observe that plaintiffs also argue the judge erred in denying their cross-motion to compel arbitration of their claims against Merrill Lynchan argument without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We note only that in light of our disposition of the negligence claim, plaintiffs have no viable cause of action to be arbitrated even if we were to ignore the other insurmountable burden that plaintiffs and Merrill Lynch never entered into an agreement to arbitrate any disputes that might later arise between them.
Affirmed.
NOTES
[1] The four actions before usLeonard L. Frederick, et al. v. Maxwell B. Smith, III, et al., Docket No. MRS-L-1108-09; John Sasser, III, et al. v. Maxwell Baldwin Smith, et al., Docket No. MON-L-2297-09; Richard J. Lisco, et al. v. Maxwell Baldwin Smith, et al., Docket No. MRS-L-1817-09; and Anthony Meola, et al. v. Maxwell Baldwin Smith, et al., Docket No. OCN-L-2555-09were consolidated and venued in Morris County.
[2] Plaintiffs also alleged that Merrill Lynch violated the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1962, but later voluntarily dismissed that claim.
[3] In describing this "superficial appeal," Judge Dumont rhetorically asked, "How can Merrill Lynch take in 8, 9, I even heard $10 million worth of checks over a 16 year period, made out to Merrill Lynch, and simply deposit them in its account holder's account, without doing anything more, because it, obviously, has some obligation to know its own customer, even though plaintiffs were not customers."
[4] District Judge Joel Pisano recently reached the same conclusion in dismissing negligence claims asserted against Merrill Lynch by other Smith clients. Tedeschi v. Smith, No. 09-03134 JAP, 2010 WL 148424 at *5-6, 2010 U.S. Dist. LEXIS 2336 at *16-17 (D.N.J. Jan. 12, 2010).