47 A.3d 1

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. AND AN-
DREW KATCHEN, PLAINTIFFS–RESPONDENTS, v. CANTONE
RESEARCH, INC., ANTHONY J. CANTONE, CHRISTINE L.
CANTONE, VICTOR POLAKOFF, PNC INVESTMENTS, LLC,
AND J.J.B. HILLIARD, W.L. LYONS, LLC, DEFENDANTS–AP-
PELLANTS.

**Docket Nos. A–2680–10T1, A–2682–10T1, A–2699–10T1 [1].**

Superior Court of New Jersey
Appellate Division

Submitted December 21, 2011—Decided June 27, 2012.

---

[1] These appeals are consolidated for purposes of this opinion.

46

48

Before Judges CUFF, WAUGH and ST. JOHN.

*George Cieri,* attorney for appellants Cantone Research, Inc., Anthony Cantone, Christine L. Cantone and Victor Polakoff.

*Lubiner & Schmidt,* attorneys for appellant PNC Investments, LLC (*David W. Schmidt,* of counsel; *John E. Jenkins,* on the briefs).

*Stark & Stark,* attorneys for appellants J.J.B. Hilliard and W.L. Lyons (*Thomas B. Lewis,* of counsel and on the briefs; *Michael J. Brittan,* on the briefs).

*Bressler, Amery & Ross,* attorneys for respondents (*David J. Libowsky,* on the brief).

The opinion of the court was delivered by

ST. JOHN, J.S.C. (temporarily assigned).

■ Defendants appeal four orders dated December 20, 2010, enjoining them from pursuing their third-party arbitration claims for contribution and indemnification against plaintiffs Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) and Andrew Katchen, and denying defendants' cross-motions to compel plaintiffs to FINRA[2] arbitration. At the outset, we note it is now settled that "orders compelling or denying arbitration are deemed final and appealable as of right as of the date entered." *GMAC v. Pittella,* 205 *N.J.* 572, 587, 17 *A.*3d 177 (2011). After a careful review of the record as well as defendants' contentions, we affirm.

---

[2] Financial Industry Regulatory Authority, Inc. (FINRA), is the successor to the National Association of Securities Dealers, Inc. (NASD). It was formed by a consolidation of the enforcement arm of the New York Stock Exchange, NYSE Regulation, Inc., and the NASD. The merger was approved by the United States Securities and Exchange Commission on July 26, 2007. FINRA performs financial regulation of member brokerage firms and exchange markets and has regulatory oversight over all securities firms that do business with the public. It also provides arbitration services by contract for the New York Stock Exchange, and other exchanges.

## I.

### A.

Merrill Lynch is a securities broker-dealer registered with FINRA as a member firm, and Katchen is registered with FINRA as an associated person of Merrill Lynch. Defendants Cantone Research, Inc., PNC Investments, Inc. (PNCI) and J.J.B. Hilliard, W.L. Lyons, LLC (Hilliard Lyons) are securities broker-dealers also registered with FINRA as member firms. Individual defendants, Anthony J. and Christine L. Cantone, and Victor Polakoff, are registered with FINRA as associated persons of defendant Cantone Research, Inc. (collectively Cantone).

Between April and June 2009, four groups of investors filed four separate complaints in the Law Division and one federal court action against Maxwell Baldwin Smith as well as Merrill Lynch and defendants.[3] By way of background, the investors were victims of a Ponzi scheme perpetrated by Smith, a former registered representative at each of the broker-dealer defendants. Smith induced the investors to invest, in the aggregate, approximately $8 million in a non-existent investment product known as Healthcare Financial Partnership. Instead of investing their money, Smith deposited the funds into a Merrill Lynch account held in his and his wife's name. The account was opened, maintained, and utilized by Smith for the sole purpose of facilitating the fraudulent scheme. The investors sought to recoup their losses from the present defendants and Merrill Lynch. The investors' claims against Merrill Lynch alleged negligent supervision of and failure to police Smith's account for fraudulent activity.

---

[3] The four Law Division actions—*Leonard L. Frederick, et al. v. Maxwell B. Smith, III, et al.*, Docket No. MRS–L–1108–09; *John Sasser, III, et al. v. Maxwell Baldwin Smith, et al.*, Docket No. MON–L–2297–09; *Richard J. Lisco, et al. v. Maxwell Baldwin Smith, et al.*, Docket No. MRS–L–1817–09; and *Anthony Meola, et al. v. Maxwell Baldwin Smith, et al.*, Docket No. OCN–L–2555–09—were consolidated and docketed in Morris County.

The four state court actions were consolidated and Merrill Lynch moved for dismissal pursuant to *Rule* 4:6–2(e). The investor-plaintiffs in those matters opposed the motion and cross-moved for an order compelling FINRA arbitration. The court granted Merrill Lynch's motion and denied the plaintiffs' cross-motion, holding that because the investors were not customers of Merrill Lynch, it owed no duty to them.

An appeal ensued, and we affirmed the decision of the motion judge. *Frederick v. Smith,* 416 *N.J.Super.* 594, 596, 7 *A.*3d 780 (App.Div.2010), *certif. denied,* 205 *N.J.* 317, 15 *A.*3d 325 (2011). In affirming the judge's decision, we determined the investors possessed no viable negligence claim against Merrill Lynch. *Id.* at 601, 7 *A.*3d 780. Additionally, we noted that

> in light of our disposition of the negligence claim, [the investors] have no viable cause of action to be arbitrated even if we were to ignore the other insurmountable burden that [the investors] and Merrill Lynch never entered into an agreement to arbitrate any disputes that might later arise between them.
>
> [*Ibid.*]

## B.

On July 22, 2010, Cantone filed third-party FINRA arbitration claims against plaintiffs, seeking contribution and indemnification in the event Cantone is found liable to the investors in arbitration actions (the *Frederick* and *Tedeschi* arbitrations) [4] they filed prior to the appeal from the order granting Merrill Lynch's motion to dismiss.

On August 16 and September 29, 2010, plaintiffs filed two complaints [5] against Cantone, seeking to enjoin them from pursu-

---

[4] *In re Arbitration Between Leonard L. Frederick, et al. v. Rickel and Assocs.,* FINRA dispute resolution case number 10–02349; and *In re Arbitration Between Ralph E. Tedeschi, et al. v. Cantone Research,* FINRA dispute resolution case number 10–02923.

[5] Docket Nos. MRS–L–2646–10 (*Cantone I* ); and MRS–L–3131–10 (*Cantone II* ).

ing third-party contribution claims related to the investors' arbitration actions.[6]

On August 26 and October 6, Judge W. Hunt Dumont entered orders to show cause requiring Cantone to demonstrate why they should not be enjoined from proceeding with their third-party claims against plaintiffs. Also on October 6, the judge entered an order allowing PNCI and Hilliard Lyons to intervene as defendants in the injunction action between plaintiffs and Cantone. PNCI and Hilliard Lyons subsequently cross-moved to compel plaintiffs to arbitrate their third-party claims via FINRA arbitration.

On October 8, 2010, the judge entered an order consolidating the complaints under the *Cantone I* docket number, and preliminarily enjoined all defendants from pursuing their third-party claims against plaintiffs in the *Frederick* and *Tedeschi* arbitrations, pending the disposition of the order to show cause.

## C.

At oral arguments on the order to show cause, plaintiffs framed two issues before the court: whether the Law Division has the authority to determine if defendants' third-party claims against plaintiffs in the *Frederick* and *Tedeschi* arbitrations are arbitrable; and whether plaintiffs are compelled to arbitrate those claims in the FINRA forum.

On December 20, 2010, the motion judge issued a comprehensive oral decision, holding that the court indeed has the authority

---

[6] Merrill Lynch also filed a motion in federal court to dismiss the *Tedeschi* complaint on similar grounds. Judge Joel A. Pisano of the District of New Jersey dismissed with prejudice the complaint against Merrill Lynch. Consent orders were entered in both federal and state courts, referring the investors' claims against defendants to FINRA arbitration, with the parties in the Law Division action stipulating for a stay of arbitration pending the outcome of *Cantone I*. On appeal, Merrill Lynch asserts that "[b]ased upon information and belief" the *Frederick* arbitration continues to be stayed by FINRA Dispute Resolution.

to decide the question of arbitrability, relying on *AT & T Technologies, Inc. v. Communications Workers of America,* 475 *U.S.* 643, 106 *S.Ct.* 1415, 89 *L.Ed.*2d 648 (1986), and *Howsam v. Dean Witter Reynolds, Inc.,* 537 *U.S.* 79, 123 *S.Ct.* 588, 154 *L.Ed.*2d 491 (2002). Further, the judge noted that "[i]t is solely within the province of this court to resolve the question of whether parties are bound to arbitrate, as well as what issues they must arbitrate." Accordingly, the judge found that plaintiffs are "not required to arbitrate because ... there is neither an arbitration agreement, not any provision in the [FINRA] Customer Code ... or Industry Code ... requiring arbitration of this claim."

The judge then proceeded to review the FINRA regulations to determine, in the absence of an agreement, whether there is a basis for arbitration. First, the judge cited section 12200 of the FINRA Customer Code,[7] and determined that because there exists no written arbitration agreement between the investors and Merrill Lynch, and because the investors are not customers of Merrill Lynch, Section 12200 does not apply. Further, the judge recognized that Merrill Lynch was not a party to the investors' arbitrations.

Next, the judge cited section 13200(a) of the Industry Code,[8] noting that defendants' asserted "arbitrations against Merrill Lynch are not disputes involving exclusively industry parties as

---

[7] Section 12200 of the FINRA Customer Code states, in relevant part: Arbitration under the Code is either: (1) requested by a written agreement, or (2) requested by the Customer; The dispute is between a Customer and a member or associated person of a member; and The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

[8] Section 13200(a) of the FINRA Industry Code states, in relevant part: Except as otherwise noted in the Code, a dispute must be arbitrated under the Code if the dispute arises out of business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons.

the arbitrations were initiated by investors." The judge determined that:

> The third party claims are derivative in nature. The third party claims involve contingent liability claims. In other words, the customers must first prove that they have a claim against the defendants before the defendants as third party plaintiffs can seek contribution or indemnification against Merrill Lynch.
>
> As a result, the arbitrations involved derivative claims begun by public customers, and they are not arbitrations between exclusively industry members.
>
> As a result, Merrill Lynch is not obligated under the Customer Code, or the Industry Code to be part of the arbitration process.
>
> While arbitration is favored, nonetheless, it has limitations, and here in the absence of an agreement between either the investor plaintiffs and Merrill Lynch, or the industry members and Merrill Lynch, there cannot be a mandated arbitration against Merrill Lynch when it chooses not to arbitrate in either situation.
>
> . . . .
>
> The third party claims that now exist arise out of the same controversy giving rise to the investor['s] negligent supervision and monitoring claim.

In support of his decision, the judge noted that under the Supreme Court's decision in *Howsam*, it is undisputed that the question of arbitrability is for the court to decide. The judge stated, however, that the *Howsam* Court "indicate[d] that the class of gateway procedural disputes are for the panel of arbitrators, not the courts to decide," and that such things "include time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate." *See Howsam, supra*, 537 *U.S.* at 84–85, 123 *S.Ct.* at 592, 154 *L.Ed.*2d at 497–98. Further, the judge stated that "the subject case presents a clear question of arbitrability whether plaintiffs and defendants have agreed to arbitrate the third-party claim[s,] which is undeniably for this court to decide." As a result, the judge held that he "has the authority to decide this matter, and that Merrill Lynch is not required to arbitrate under the circumstances."

On the issue of whether to issue the injunction, the judge determined that plaintiffs will suffer irreparable harm if forced to expend time and resources arbitrating an issue that is not arbitrable; plaintiffs "would likely succeed on the merits of their application, because arbitration is contractual by nature" and plaintiffs have not agreed to submit to arbitration; and no hardship would

result to defendants if the injunction was granted because the claims for contribution and indemnification have "not even accrued and will not accrue at all unless and until at a minimum [ ] defendants are found to be liable to the investor[s] on their claims."

Following his oral decision, the judge entered orders that: preliminarily enjoined Cantone from proceeding with their third-party claims against plaintiffs in the *Frederick* and *Tedeschi* arbitrations; and denied Hilliard Lyons and PNCI's cross-motions to compel plaintiffs to FINRA arbitration.

Defendants appealed, and the appeals are consolidated before us. For ease of readership and unless otherwise noted, we refer to Cantone, Hilliard Lyons, and PNCI as defendants; we refer to Merrill Lynch and Katchen as plaintiffs.

## II.

On appeal, defendants argue the motion judge lacked authority to interpret FINRA's Customer Code and Industry Code, as any interpretation is not delegated to Law Division judges but instead to the arbitrators, who are better equipped to interpret FINRA's rules. Additionally, defendants contend the judge erred in failing to order their claims to FINRA arbitration because "there is a contract calling for the parties to arbitrate." In support of the assertion that a contract exists between plaintiffs and defendants, they argue the two threshold conditions triggering FINRA arbitration have been satisfied: (1) the claim must involve a dispute between either a FINRA-member and a customer, or an associated person and a customer; and (2) the dispute must arise in connection with the activities of the member or in connection with the business activities of the associated person.

With regard to the injunction barring them from seeking contribution and indemnification in the arbitration, defendants contend the judge erred in finding their claims derivative of the investors'

because he "created a situation in which disputes of this type cannot be resolved either in arbitration or through the courts."

We address these arguments in turn.

## A.

As a preliminary matter, we note the applicable standard of our review on appeal. Because the matter at issue is legal in nature, our review of the motion judge's decision is plenary. *First Options of Chicago, Inc. v. Kaplan*, 514 *U.S.* 938, 947–48, 115 *S.Ct.* 1920, 1926, 131 *L.Ed.*2d 985, 995–96 (1995) (holding the review of arbitration award requires no special standard, findings of fact must be accepted if not clearly erroneous, and questions of law are decided de novo); *see also Manalapan Realty v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."). Where the issues involve contract interpretation and the application of case law to the facts of the case, the appellate court's standard of review is de novo. *Hutnick v. ARI Mut. Ins. Co.*, 391 *N.J.Super.* 524, 528, 918 *A.*2d 729 (App.Div.), *certif. denied,* 192 *N.J.* 70, 926 *A.*2d 855 (2007).

## B.

We firmly adhere to the principle that "arbitration is ... 'favored ... as a means of resolving disputes[.]' " *Angrisani v. Fin. Tech. Ventures, L.P.*, 402 *N.J.Super.* 138, 148, 952 *A.*2d 1140 (App.Div.2008) (quoting *Martindale v. Sandvik, Inc.*, 173 *N.J.* 76, 84, 800 *A.*2d 872 (2002)). "The affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism to resolve disputes." *Alfano v. BDO Seidman, LLP*, 393 *N.J.Super.* 560, 575, 925 *A.*2d 22 (App.Div.2007). New Jersey jurisprudence and public policy favor alternative dispute resolution and are consistent with our view that "[l]itigation ought to be a last resort, not a first one." *Billig v. Buckingham Towers Condo. Ass'n*, 287 *N.J.Super.* 551, 564, 671 *A.*2d 623 (App.Div.1996). A strong public

policy favors arbitration as a means of dispute resolution and
" '[a]n agreement to arbitrate should be read liberally in favor of
arbitration.' " *Angrisani, supra,* 402 *N.J.Super.* at 148, 952 *A.*2d
1140 (quoting *Marchak v. Claridge Commons, Inc.,* 134 *N.J.* 275,
282, 633 *A.*2d 531 (1993)). *See also Bruno v. Mark MaGrann
Assocs.,* 388 *N.J.Super.* 539, 545, 909 *A.*2d 768 (App.Div.2006)
(citing *Young v. Prudential Ins. Co. of Am.,* 297 *N.J.Super.* 605,
617, 688 *A.*2d 1069 (App.Div.), *certif. denied,* 149 *N.J.* 408, 694
*A.*2d 193 (1997)). "[D]oubts concerning the scope of arbitrable
issues must be resolved in favor of arbitration, over litigation."
*Alfano, supra,* 393 *N.J.Super.* at 576, 925 *A.*2d 22. "An agree-
ment relating to arbitration should thus be read liberally to find
arbitrability if reasonably possible." *Jansen v. Salomon Smith
Barney, Inc.,* 342 *N.J.Super.* 254, 257, 776 *A.*2d 816 (App.Div.),
*certif. denied,* 170 *N.J.* 205, 785 *A.*2d 434 (2001).

 Notwithstanding the foregoing well-established princi-
ples, we also recognize that under both federal and state law,
" 'arbitration is a matter of contract and a party cannot be
required to submit to arbitration any dispute which he has not
agreed so to submit.' " *AT & T Techs., supra,* 475 *U.S.* at 648, 106
*S.Ct.* at 1418, 89 *L.Ed.*2d at 655 (quoting *United Steelworkers of
Am. v. Warrior & Gulf Navigation Co.,* 363 *U.S.* 574, 582, 80 *S.Ct.*
1347, 1353, 4 *L.Ed.*2d 1409, 1417 (1960)). "[T]he duty to arbitrate
... [is] dependent solely on the parties' agreement." *Cohen v.
Allstate Ins. Co.,* 231 *N.J.Super.* 97, 101, 555 *A.*2d 21 (App.Div.),
*certif. denied,* 117 *N.J.* 87, 563 *A.*2d 846 (1989). The determina-
tion as to whether such a duty exists "rests solely on the parties'
intentions as set forth in the writing." *Martindale, supra,* 173
*N.J.* at 92, 800 *A.*2d 872. Therefore, "a 'court may not rewrite a
contract to broaden the scope of arbitration[.]' " *Garfinkel v.
Morristown Obstetrics & Gynecology Assocs.,* 168 *N.J.* 124, 132,
773 *A.*2d 665 (2001) (quoting *Yale Materials Handling Corp. v.
White Storage & Retrieval Sys., Inc.,* 240 *N.J.Super.* 370, 374, 573
*A.*2d 484 (App.Div.1990)).

■ The motion judge's responsibility to decide the issue of arbitrability depends on whether it is an issue of substantive arbitrability or procedural arbitrability. *Bd. of Educ. of Alpha v. Alpha Educ. Ass'n*, 190 *N.J.* 34, 42, 918 *A.*2d 579 (2006).

■ Substantive arbitrability refers to "whether the particular grievance is within the scope of the arbitration clause specifying what the parties have agreed to arbitrate." *Std. Motor Freight, Inc. v. Local Union No. 560, Int'l Bhd. of Teamsters*, 49 *N.J.* 83, 96, 228 *A.*2d 329 (1967). Issues of substantive arbitrability are generally decided by the court. *Ibid.* Procedural arbitrability refers to whether a party has met the procedural conditions for arbitration. *Id.* at 97, 228 *A.*2d 329. Matters of procedural arbitrability "should be left to the arbitrator." *Ibid.* (citing *John Wiley & Sons, Inc. v. Livingston*, 376 *U.S.* 543, 557, 84 *S.Ct.* 909, 918, 11 *L.Ed.*2d 898, 909 (1964)). Further, there is a presumption that the arbitrator should decide " 'allegations of waiver, delay, or a like defense to arbitrability.' " *Howsam, supra,* 537 *U.S.* at 84, 123 *S.Ct.* at 592, 154 *L.Ed.*2d at 498. The *Howsam* Court has determined that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." The Court also determined that it is a judicial decision, not a question left to an arbitrator, "whether the parties have submitted a particular dispute to arbitration ... [u]nless the parties clearly and unmistakably provide otherwise." *Ibid.* (citations omitted).

### III.

■ As the proponent of arbitration, defendants have the burden to establish the existence of an agreement to arbitrate between themselves and Merrill Lynch. Here, it is undisputed that there was no specific written arbitration agreement between plaintiffs and defendants concerning the *Frederick* and *Tedeschi* arbitrations. Defendants argue, however, that an agreement to arbitrate arises out of Merrill Lynch's membership with FINRA and its predecessor organizations. Defendants refer us to *Merrill*

*Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis,* 903 *F*.2d 109, 113 (2d Cir.1990), which determined that "the arbitration rules of an exchange are sufficient to compel arbitration of exchange-related disputes in the absence of a specific written arbitration agreement." However, here plaintiffs and defendants were not engaged in exchange-related disputes with each other. On the contrary, we held in *Frederick* that plaintiffs owed no duty to the investors, who were non-customers. *Supra,* 416 *N.J.Super.* at 596, 7 *A*.3d 780.

We agree with Judge Dumont that the Law Division was the correct venue for plaintiffs to pursue a determination as to whether the parties agreed to arbitrate the claims in dispute. The absence of an express agreement to arbitrate these claims undercuts any argument that either party "clearly and unmistakably" provided otherwise. *Howsam, supra,* 537 *U.S.* at 83, 123 *S.Ct.* at 591, 154 *L.Ed.*2d at 497.

■ Because "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration," *First Options, supra,* 514 *U.S.* at 945, 115 *S.Ct.* at 1925, 131 *L.Ed.*2d at 994, and even though parties can be compelled to arbitrate claims arising from exchange-related disputes, *Merrill Lynch, supra,* 903 *F*.2d at 113, plaintiffs here cannot be compelled to arbitrate absent an agreement or a covered, exchange-related transaction with defendants. Defendants have failed to advance any support for their contention that simply because Merrill Lynch and defendants are all FINRA members, they have somehow consented to arbitration for *all* claims that arise between them. Here, the Merrill Lynch account was used by Smith as a personal depository of funds. Defendants have failed to demonstrate that Merrill Lynch was acting in any way as a broker-dealer for any of the parties or that it engaged in a covered, exchange-related transaction with any defendant.

Plaintiffs correctly assert that the investors' third-party complaints are not covered, exchange-related transactions of either FINRA Code. Their position is supported by the Second Circuit's

decision in *John Hancock Life Insurance Co. v. Wilson*, 254 *F*.3d 48, 57 (2d Cir.2001), which held that

> we do not intend to limit the ability of an exchange to fashion rules that bind its members to present arbitrability challenges to the arbitrators. To do so, however, *it must either use clear and unmistakable language or prohibit its members from bringing such challenges in the first place.* Accordingly, absent an express agreement between the parties incorporating the NASD Code or providing that "any and all" disputes be settled in arbitration, the [ ] court properly undertook the determination of whether the Investors' claims are arbitrable.
>
> [ (Emphasis added).]

We have already noted that there was no separate agreement among the parties that required plaintiffs to submit to the *Frederick* and *Tedeschi* arbitrations. Defendants fail to point to any section of the FINRA Code of Arbitration Procedures that expressly indicates that "any and all" disputes between member firms must be submitted to arbitration; particularly those initiated for contribution and indemnification from a member with whom the party seeking arbitration had no agreement to arbitrate. While PNCI cites to the FINRA By–Laws, it fails to cite a section that binds a member exclusively to arbitration for all disputes. We note if that were the By–Laws' directive, then separate sections in the Customer and Industry Codes outlining when members and/or customers may proceed to arbitration would not seem necessary.

The motion judge accurately determined that the basis for the contribution and indemnification claims was not a dispute between industry members, as it was derivative in nature and contingent on the initial dispute between defendants and the investors, defendants' customers. Therefore, the Industry Code, which compels arbitration between member firms, does not apply in these circumstances. Likewise, the Customer Code does not apply to plaintiffs because neither defendants nor the investors are customers, as defined by the Customer Code, of Merrill Lynch.

After reviewing the record, we agree with the motion judge that a plain reading of the Industry Code and case law concerning the courts' role in interpreting arbitration agreements reveals that FINRA members are required to submit to arbitration only if an

agreement between them exists. Without such an agreement, and without an exchange-related dispute, which triggers the mandatory arbitration clause of Section 13200 of the Industry Code, the issue of arbitrability is for the motion judge to determine.

Our inquiry does not end here. Defendants contend that the court's ruling has set a precedent that will forever brand third-party claims for contribution and indemnification as derivative. However, this assertion is speculative, considering defendants have not attempted to file a complaint against plaintiffs in the Law Division.[9] · Therefore, we decline to address this issue.

Defendants further argue that the courts are not a proper venue to seek contribution or indemnification because FINRA's Code of Arbitration governs these types of disputes. Even though arbitration is clearly favored as a matter of policy, when no arbitration agreement exists or if there is a "disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy[,]" the Supreme Court has reserved such issues for the courts. *Howsam, supra,* 537 *U.S.* at 84, 123 *S.Ct.* at 592, 154 *L.Ed.*2d at 497. Neither FINRA's Industry or Customer Codes cover the claims at issue, and the Supreme Court's list articulated in *Howsam* outlines what matters are strictly reserved to the arbitrators: prerequisites such as waiver, delay, time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate. *Id.* at 85, 123 *S.Ct.* at 592, 154 *L.Ed.*2d at 498. None of these issues are the subject of the present action.

PNCI urges this court to consider the issue on appeal as one dealing with joinder under the Customer Code, which is procedural by nature and reserved to the arbitrators. Although PNCI cites no authority for such a proposition, plaintiffs correctly note

---

[9] To the extent defendants have a viable claim against Merrill Lynch that is not purely derivative of the claims by the investors that have already been dismissed, nothing in *Frederick* or in this opinion prevents them from pursuing it in the Law Division.

that by allowing defendants to join plaintiffs as third-party defendants in the investor-initiated arbitrations, such a concession would strip the courts of its authority to determine gateway issues, such as whether the parties are bound by an arbitration clause or whether a binding contract applies to a particular controversy. Here, the issue before the court is indeed a gateway dispute, and one that the Law Division has the authority to decide.

## IV.

Finally, we address the court's order granting plaintiffs an injunction. Injunctive relief will be imposed only when the proponent demonstrates that it has established the liability of the other party, the need for injunctive relief, "and the appropriateness of such relief on a balancing of equities." *Rinaldo v. RLR Inv., LLC*, 387 *N.J.Super.* 387, 397, 904 *A.*2d 725 (App.Div.2006).

Here, the judge determined the issue of arbitrability and found that plaintiffs would suffer hardship by being subject to defending arbitration actions not required by the FINRA codes. Further, defendants have not demonstrated that they face immediate and irreparable harm, as the arbitrations are ongoing and the record indicates that the *Frederick* arbitration has been stayed by FINRA. We see no reason to disturb Judge Dumont's grant of injunctive relief.

Accordingly, we affirm the orders entered in the Law Division enjoining defendants from pursuing their third-party claims against plaintiffs in arbitration, as well as denying their cross-motions to compel plaintiffs to arbitration.

Affirmed.