**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4292-15T1

TIMOTHY R. KELLERS,

    Plaintiff-Appellant,

v.

KATHLEEN M. KELLERS,

    Defendant-Respondent.

_____

Argued telephonically May 24, 2017 —
Decided September 18, 2017

Before Judges O'Connor and Whipple.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Monmouth
County, Docket No. FM-13-0196-14.

Robert A. Abrams argued the cause for
appellant.

Brian D. Winters argued the cause for
respondent (Keith, Winters & Wenning, LLC,
attorneys; Mr. Winters, on the brief).

PER CURIAM

    In this post-judgment matrimonial matter, plaintiff Timothy

R. Kellers appeals from a May 5, 2016 Family Part court order

denying his motion to compel defendant Kathleen M. Kellers to contribute toward certain debts incurred during the marriage. We affirm in part and remand for further proceedings.

In June 2014, the parties divorced after thirty-two years of marriage. A matrimonial settlement agreement (MSA), incorporated into the parties' dual final judgment of divorce, includes provisions allocating marital debt. Various provisions address how the parties are to handle an Internal Revenue Service (IRS) tax lien that attached to the marital home during the marriage.

Specifically, from 1999 to 2004, the parties failed to file federal income tax returns and to pay any federal income taxes, and eventually the IRS placed a lien against the marital home. In the MSA, the parties agreed to pay such debt from the net sale proceeds of their home, which ultimately sold in December 2015. At the time of the sale, the parties owed the IRS $102,590.88 in back taxes, including interest and penalties. However, from December 2011 to the time the marital home was sold, the IRS also garnished $41,580 from plaintiff's wages.

Paragraph 2.1(d) of the MSA addresses the IRS debt, stating in relevant part:

2

The parties shall evenly split the net proceeds from the sale of the Marital home after paying the 1999-2004 tax liens set forth in this Paragraph . . . . The parties acknowledge that there were tax liens on the Marital home as a result of the parties' not filing their 1999-2004 income taxes. The liens are being paid prior to the sale of the home, via wage garnishment against Husband's wages at the rate of $1,153.00 a month. The parties shall continue to work with accountant Joe Gunteshi in an attempt to reduce the tax liens. The parties shall use the proceeds from the sale of the Marital home, after paying realty commissions and other costs, if any, to pay all of the 1999-2004 tax liens on the Marital home.

As for other debt, paragraph 2.1(d) provides:

Any liens or judgments, if any, other than the tax liens for failure to file and pay the 1999-2004 taxes, shall be the responsibility of the party whose name the lien or judgment is in.

Paragraphs 2.7(a), (b), and (c) of the MSA similarly address the IRS tax lien and how other debt is to be handled:

a. The 1999-2004 Tax liens that are on the marital home shall be paid out of the net proceeds from the sale of the Marital Home.

b. Other than as set forth in Paragraph 2.7(a) above, any and all debt in the name of the Husband shall be the sole responsibility of the Husband, and the Husband shall hold the Wife harmless and indemnify her for any and all liability for any such debt. . . .

c. Other than as set forth in Paragraph 2.7(a) above, any and all debt in the name

3

> of the Wife shall be the sole responsibility
> of the Wife, and the Wife shall hold the
> husband harmless and indemnify her for any
> and all liability for any such debt. . . .

In addition, paragraph 3.2 states:

> The parties acknowledge there are tax liens
> on the marital property for the years of
> 1999-2004 for which they had not filed their
> tax returns.  They agree to pay off the tax
> liens out of the net proceeds from the sale
> of the marital home.

Finally, paragraph 3.3 provides:

> The parties agree that all tax liabilities
> pursuant to this Agreement, and other than
> for the tax years 1999-2004, shall be the
> sole responsibility of the respective
> parties and each agrees to hold the other
> harmless for any past, present, or future,
> tax liabilities assessed against either one
> of the [parties] for state or federal income
> taxes.

During the marriage, plaintiff and his mother co-owned a business known as Kellers Auto Electric.  They failed to pay taxes to the State of New Jersey due in 1996 and 1997.  By the time the house sold in 2015, these taxes were, in the aggregate, $130,175.62, including interest and penalties.  These particular taxes were not specifically addressed in the MSA.

At the time of the closing, the parties did not appear, but their real estate attorney did and signed documents on the parties' behalf pursuant to a power of attorney.  Out of the net sale proceeds, various sums were allocated between the parties

4

to pay certain debts in accordance with the MSA. The parties' attorney also signed an addendum on behalf of plaintiff that made him entirely responsible for the tax debt owed to the State.

After the closing, defendant filed a motion to enforce certain provisions of the MSA, and plaintiff filed a cross-motion seeking, among other things, the following relief. First, plaintiff sought to have defendant contribute toward the tax payments he made through the garnishment of his wages. He contended the MSA makes clear the parties were to contribute equally toward all of the taxes owed to the IRS, not just the balance owed to the IRS at the time of the closing.

Plaintiff also sought to vacate the MSA, maintaining he had not been aware of the tax debt owed to the State before entering into the MSA. He claimed had he known of such debt, he would have not have agreed to the terms of the MSA unless it provided defendant was also responsible for these taxes.

The court rejected plaintiff's arguments and denied both requests for relief. The court reasoned because the MSA did not expressly state defendant was responsible for the IRS debt garnished from plaintiff's wages, it could not compel her to contribute toward these taxes. As for the taxes paid to the State, the court's principal finding was plaintiff was aware of

5

this debt before he entered into the MSA; thus, he had no grounds to complain the MSA did not compel defendant to pay toward this debt.

II

On appeal, plaintiff contends the court erred when it denied his requests for relief. Plaintiff essentially reprises the arguments made before the Family Part court, though added some additional arguments.

Addressing plaintiff's request to vacate the MSA, we disagree the court erred. The record is clear plaintiff knew of the taxes owed to the State before he entered into the MSA, as demonstrated by the letters exchanged between counsel well before plaintiff signed the agreement. We affirm the court's decision denying this relief for essentially the same reasons it expressed in its written decision accompanying the May 5, 2016 order.

We further observe paragraph 3.3 of the MSA clearly states all tax debt, other than that incurred from 1999 to 2004, shall be "the sole responsibility of the respective parties and each agrees to hold the other harmless for any past, present, or future, tax liabilities assessed against either one of the [parties] for state or federal income taxes." We are satisfied the parties agreed defendant is not responsible for any of the

6

tax debt owed to the State. However, we disagree with the Family Part court's decision to reject, without an evidential hearing, plaintiff's request to compel defendant to contribute toward those tax payments he made through the garnishment of his wages.

Review of a trial court's interpretation of an agreement is de novo. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cantone Research, Inc., 427 N.J. Super. 45, 57 (App. Div.), certif. denied, 212 N.J. 460 (2012). The reviewing court must evaluate the common intention of the parties and the purpose they tried to achieve. Tessmar v. Grosner, 23 N.J. 193, 201 (1957). The "court's role is to consider what is 'written in the context of the circumstances' at the time of drafting and to apply 'a rational meaning in keeping with the expressed general purpose.'" Sachau v. Sachau, 206 N.J. 1, 5-6 (2011). "To the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing Pacifico v. Pacifico, 190 N.J. 258, 267 (2007)).

Here, the MSA contains language that can be understood to mean only the existing debt at the time of the house sale should

be paid out of the proceeds. On the other hand, there is also language that can be construed to mean the parties were to share equally all of this debt.[1] In our view, the ambiguity in the agreement requires a plenary hearing so the court may properly discern parties' intentions and whether they agreed defendant is to contribute toward the debt garnished by the IRS. Accordingly, we remand this matter so the court may conduct a plenary hearing on this issue.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] We question, without deciding, whether plaintiff would be entitled to any reimbursement of those wages paid to the IRS before the complaint was filed, but leave such consideration to the Family Part court.