**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2532-18T2

IN THE MATTER OF
THE ESTATE OF SAM
ATHANASENAS,

     Deceased.

_____

          Argued January 13, 2020 – Decided February 11, 2020

          Before Judges Sumners and Natali.

          On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000536-18.

          Haralampo Kasolas argued the cause for appellant George Athanasenas (Brach Eichler LLC, attorneys; Haralampo Kasolas, of counsel and on the briefs).

          Patrick J. Jennings argued the cause for respondent Constantina Giannaros.

PER CURIAM

Appellant George Athanasenas (George[1]), decedent Sam Athanasenas' (Sam) son, appeals from the Chancery Division's January 3, 2019 order that referred his claims to arbitration. After a thorough consideration of the record and the parties' arguments in light of the applicable legal principles, we reverse.

I.

George and respondent Constantina Giannaros (Constantina) are brother and sister and co-executors and beneficiaries of Sam's estate. At the time of his death, Sam was the sole officer, director, and manager of JTS Restaurant Corporation (JTS), which owned and operated a diner in Fairview, and included assets such as a liquor license, real property, trade fixtures, goodwill, and furniture.

According to George, after Sam's death, he secured a $2.5 million cash offer to purchase the assets of JTS, but never received authorization from Constantina to close the sale. Instead, Constantina sued George and JTS and asserted claims for an accounting, shareholder oppression, conversion and misappropriation, unjust enrichment, breach of fiduciary duty and loyalty, and imposition of constructive trust.

---

[1] Intending no disrespect, we refer to the parties, and the decedent, by their first names.

A-2532-18T2

George and Constantina, their respective trusts, and Sam's estate, reached a settlement agreement on July 19, 2017. According to that agreement, in exchange for Constantina's voluntary dismissal of her lawsuit, the parties agreed "to resolve the dispute set forth in the lawsuit and all other disputes between them by mediation/arbitration." The parties further agreed that mediation and arbitration would be decided by a single person, former Superior Court Judge Thomas P. Olivieri (Arbitrator).

The Arbitrator issued a discovery schedule in the arbitration in which he instructed both George and Constantina to provide "the specifics of each claim he/she will assert at the [a]rbitration." In a February, 5, 2018 letter, George's counsel set forth multiple claims in his "bill of particulars": 1) claims of $93,523 and $347,033 for salary and cash infusions into JTS; 2) repayment of a $26,166.22 advance to Constantina pursuant to the July 19, 2017 settlement agreement; 3) payment of an $86,204 note payable to George as reflected on the 2016 JTS tax return; 4) proceeds of the sale of the family home in Long Island; 5) payment of his loan to JTS for its legal fees; and 6) approximately $10,000 in miscellaneous items.

Approximately two weeks later, George and Constantina executed a February 20, 2018 agreement to arbitrate. The agreement indicated that George

and Constantina agreed to arbitrate "all issues that could be raised and adjudicated in the Litigation and as otherwise stated herein except those excluded from arbitration by [Rule] 5:1-5(a)." Although "Litigation" was not defined, the agreement specifically referenced that the parties participated in "litigation involving a dispute between the [p]arties regarding claims referenced in the February 5, 2018 letter and email from the [p]arties' counsel."

The February 20, 2018 agreement further stated that George and Constantina were "fully aware of their rights to have all differences that exist between them . . . heard by the Superior Court of New Jersey, in connection with the pending Litigation[,] [but] have agreed to waive their right to seek their relief in court" consistent with the February 20, 2018 agreement. Pursuant to paragraph two of the agreement, the parties agreed to proceed to arbitration with the understanding that

> [t]he Arbitrator shall have final say in determining whether an issue or dispute is within the scope of the Arbitrator's jurisdiction. If the Arbitrator determines that an issue or dispute is not within the scope of his jurisdiction, then that issue or dispute shall be referred back to the Law Division for determination.
>
> [(Emphasis added).]

4

The agreement also provided that neither party would "have the right or power to expand, narrow, amend or revoke this [a]greement without the consent . . . of all of the other [p]arties."

The parties closed the sale of JTS and its assets for $1.75 million the following day. On June 22, 2018, George's counsel sent a letter to the Arbitrator requesting leave to amend his February 5, 2018 bill of particulars to add claims pertaining to Constantina's alleged failure to take the necessary and appropriate steps to close the earlier $2.5 million offer to purchase the JTS assets, causing a loss of $375,000. Relying on Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479 (1992), he denied counsel's request in a July 2, 2018 email and determined that in light of the February 20, 2018 agreement which limited the matters to be arbitrated to the February 5, 2018 submissions, "[w]ithout [Constantina's] consent, the [a]rbitration cannot be expanded beyond that which the [p]arties agreed to arbitrate."

After the Arbitrator's denial, and in accordance with the procedure established in paragraph two of the February 20, 2018 agreement, George filed an August 7, 2018 complaint in the Chancery Division asserting seven causes of action against Constantina related to the failed $2.5 million sale: 1) breach of fiduciary duty as co-executor of Sam's estate; 2) waste; 3) negligence; 4) breach

of fiduciary duty of care as officer, director, voting shareholder, and equity shareholder in JTS; 5) breach of fiduciary duty of loyalty as officer, director, voting shareholder, and equity shareholder in JTS, 6) oppressed minority shareholder; and 7) tortious interference with prospective economic advantage and contractual relations by Constantina and her husband.

Constantina requested that the Arbitrator dismiss George's Chancery complaint arguing that the claims arising from the unsuccessful $2.5 million sale were known to George before the February 5, 2018 deadline and he waived those claims by failing to include them in his bill of particulars. The Arbitrator denied her request and noted that he did "not have the authority to dismiss the Chancery [A]ction" and that she needed to "file a [n]otice of [m]otion before the Chancery judge seeking dismissal of that action."

Constantina moved to dismiss George's complaint which the trial court denied in a November 9, 2018 order. The trial court noted that "if [it] were to accept the arguments put forth here, [George] would have no remedy with respect to the alleged claims" and "the parties themselves . . . agreed that if [the Arbitrator] determined that the dispute was not within his jurisdiction, then the matter would be decided by the courts." The trial court also held that since Constantina "did not wish to pursue the matter or objected to the matter before

[the Arbitrator], the [c]ourt [would] allow this matter to proceed in the Superior Court." The same day, the court entered an order transferring the matter to the Probate Part and George thereafter filed an amended verified complaint alleging the same seven causes of action.

Approximately two months later, at a January 3, 2019 case management conference, the trial court sua sponte reconsidered the November 9, 2018 order and compelled arbitration. The court memorialized in its order that Constantina now "consent[ed] to having the issues raised in this matter determined in arbitration . . . as previously agreed by the parties," and at the case management conference explained that "[he] made [his original] ruling . . . because it was [his] understanding that [Constantina] did not consent to hearing these matters before [the Arbitrator]." The court concluded that "[i]f [the Arbitrator] says now that you have consent of every [party, you can] send[] . . . everything to me, [the trial court would] enter an order transferring it to [him]," but if he refused, "then [the trial court's] ruling [would] stand."

For context, at the case management conference, Constantina consented to arbitration "as a result of [the trial court's November 9, 2018] ruling." George, however, now argued against arbitration, despite his earlier attempts to have his claims heard by the Arbitrator, contending the costs incurred related to

remanding the matter to arbitration would be significant. George further maintained that the arbitration was now too far along and he was "going to have to go back and re-amend expert reports . . . [and] spend more money in experts" which was a "big problem . . . given how far along [they were] with the matter, given the motions that are pending, [and] given the [expert] report [that] is already completed." George finally contended that his last issue related to the scope of permissible discovery as "[p]roving the type of claim [he had] before [the trial court] . . . require[ed] [him] to have full power of depositions, subpoenas, document demands, [and] interrogatories" which he believed was "not something that [was] readily available in an arbitration."

## II.

We use a de novo standard of review when determining the enforceability of arbitration agreements. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). The validity of an arbitration agreement is a question of law, and we conduct a plenary review of such legal questions. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014) (citing Kieffer v. Best Buy Stores, L.P., 205 N.J. 213, 222-23 (2011)); Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch, 215 N.J. at 186).

A-2532-18T2

Arbitration is fundamentally a matter of contract. NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). "An agreement to arbitrate 'must be the product of mutual assent, as determined under customary principles of contract law.'" Barr, 442 N.J. Super. at 605-06 (quoting Atalese, 219 N.J. at 442). "Mutual assent requires that the parties understand the terms of their agreement" and, where the "agreement includes a waiver of a party's right to pursue a case in a judicial forum, 'clarity is required.'" Id. at 606 (citation omitted). That is, "the waiver must be clearly and unmistakably established, . . . should clearly state its purpose, . . . [a]nd the parties must have full knowledge of the legal rights they intend to surrender." Ibid. (citations omitted).

Because "arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cantone Research, Inc., 427 N.J. Super. 45, 59 (App. Div. 2012) (quoting Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002)); see also First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995) ("[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration."). Therefore, "[a] court must look to the language of the arbitration clause to establish its boundaries[,]" and

"may not rewrite a contract to broaden the scope of arbitration." Hirsch, 215 N.J. at 188 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)).

III.

George principally maintains that the language in the February 20, 2018 arbitration agreement "confirms that the parties agreed to arbitrate only those claims set forth in [the] February 5, 2018 submission[s]," specifically his claims set forth in his February 5, 2018 bill of particulars. He also maintains that the arbitration agreement "makes clear that the decision on whether to arbitrate [his] claims was not vested with the trial court, but with the arbitrator." George concludes that since both the arbitrator and trial court, in reliance on the arbitrator's decision, determined that his claims were not arbitrable, "the trial court erred . . . when it overruled the arbitrator's determination and compelled arbitration sua sponte."

Constantina argues that George's Chancery Action is subject to arbitration pursuant to the July 19, 2017 settlement agreement. She maintains that agreement "could not have been clearer, nor could the arbitration language have been any broader," and thus "[a]ll disputes between [George and her] in all capacities, including Sam's estate, were subject to arbitration." Constantina

10

emphasizes that she objected to George introducing additional claims in the arbitration "not because the arbitrator did not have jurisdiction," but rather because "the known claim was brought late." She concludes, however, that "[g]iven the [c]ourt's ruling that [George] is entitled to have the claims heard, the claims must proceed in arbitration and the matter was properly returned to the arbitrator."

We agree with George's arguments that the trial court erred in compelling arbitration as the February 20, 2018 arbitration agreement clearly limited the broad language of the July 19, 2017 settlement agreement to restrict the scope of arbitration to the issues set forth in the parties' February 5, 2018 submissions. As noted, the February 20, 2018 agreement explicitly referred to "litigation involving a dispute between the [p]arties regarding claims referenced in the February 5, 2018 letter and email from the [p]arties' counsel." By compelling arbitration of George's new claims pertaining to his alleged loss in the sale of the JTS assets, the court improperly rewrote the parties' second agreement by broadening the scope of arbitration to include claims that were beyond what the parties consented to in the more limited February 20, 2018 agreement. See Hirsch, 215 N.J. at 188.

Moreover, the court's January 3, 2019 decision rendered ineffective the provision in the February 20, 2018 agreement that the Arbitrator had "final say in determining whether an issue or dispute is within the scope of [his] jurisdiction" and that if he determined an issue was not within his jurisdiction, the dispute would be referred to the Law Division. The Arbitrator initially determined correctly that he could not expand the arbitration beyond the February 5, 2018 submissions without the parties' consent, which at the time clearly did not exist, and George properly sought relief in the trial court. Thus, it was error for the court to refer George's claims back to arbitration contrary to the parties' express language in the agreement.

The court's decision to compel arbitration was principally based on Constantina's revised decision at the January 3, 2019 case management conference to agree to arbitrate the dispute regarding the sale price for the business which formed the basis for George's Chancery Division complaint. Although we acknowledge that the parties have essentially switched positions, as noted, the record does not indicate that George and Constantina agreed to arbitrate those claims. Indeed, both the Arbitrator and the trial court in its first ruling clearly stated that mutual consent did not exist, which is supported by the February 20, 2018 agreement (specifically the "litigation . . . regarding claims

referenced in the February 5, 2018 letter and email" language) and the reservation in paragraph two that at least some claims (those "the Arbitrator determines . . . is not within the scope of his jurisdiction") would not be arbitrated and instead "referred back to the Law Division for determination."  If the February 20, 2018 agreement did not limit the arbitration agreement contained in the July 19, 2017 settlement agreement, there would have been no purpose to enter the February 20, 2018 agreement and include reference to the February 5, 2018 bill of particulars.

Further, at the time the court reconsidered its original ruling, George clearly indicated that he no longer desired arbitration of those claims, a not unreasonable position given that he complied with the February 20, 2018 agreement and filed and prosecuted a separate complaint in the Chancery Division, and incurred costs and expenses in doing so which included appearing at two court conferences as a result of Constantina's initial lack of consent and the Arbitrator's ruling.  Thus, it was error for the court to base its decision based on Constantina's revised and unilateral consent after the circumstances had changed.

13

IV.

In sum, we conclude the trial court erred in compelling arbitration of George's claims with respect to the alleged loss of the $2.5 million sale of the JTS assets. As discussed, the February 20, 2018 agreement effectively limited the original arbitration agreement to the claims set forth in the parties' February 5, 2018 submissions to the Arbitrator. Consequently, we reverse the January 3, 2019 order and remand the matter to the Chancery Division for further proceedings consistent with this opinion.

In light of our decision, we need not address George's second argument that Constantina waived her right to arbitrate the additional claims when she objected to the inclusion of those claims and rendered the Superior Court as the only forum where George could seek relief. We similarly need not address George's third argument that the trial court abused its discretion when it sua sponte reconsidered its November 9, 2018 decision because it lacked jurisdiction to reconsider its original order after the twenty-day limitation set forth in Rule 4:49-2.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2532-18T2