**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4915-17T2

JESSICA STUTHEIT,

    Plaintiff-Respondent,

v.

ELMWOOD PARK AUTO MALL,
ESSO MOTOR CARS, ILYA
IGDALEV, and MICHAEL SHOR,

    Defendants-Appellants.

_____

> Submitted December 12, 2018 – Decided December 26, 2018
>
> Before Judges Nugent and Mawla.
>
> On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1002-18.
>
> Christopher J. Koller, attorney for appellants.
>
> Law Offices of Elliott Malone, LLC, attorneys for respondent (Elliott Malone, of counsel and on the brief; Paul DePetris, on the brief).

PER CURIAM

Defendants appeal from a May 15, 2018 order denying their motion to dismiss plaintiff Jessica Stutheit's complaint as to defendants Ilya Igdalev and Michael Shor, and to dismiss the complaint and compel arbitration as to defendant Esso Motor Cars, Inc. d/b/a Elmwood Park Automall (collectively Esso). We reverse and remand for further proceedings consistent with this opinion.

The following facts are taken from the motion record. In November 2016, plaintiff signed a contract with Esso to purchase a vehicle by trading in her used vehicle to finance most of the purchase. The contract included a warranty disclaimer, a "waive and release" provision, and an arbitration provision. The arbitration language read as follows:

> AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION.
>
> The parties to this agreement agree to arbitrate any claim, dispute, or controversy, including all statutory claims and any state or federal claims ("claims") that may arise out of or relating to the sale or lease identified in this agreement. By agreeing to arbitrate the parties understand and agree that they are giving up their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to resolve their disputes. Consumer Fraud, Used Car Lemon Law, and Truth-in-

A-4915-17T2

Lending claims are just three examples of the various types of claims subject to arbitration under this agreement. . . . The decision of the arbitrator shall be binding upon the parties. Any further relief sought by either party will be subject to the decision of the arbitrator. . . .

THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT. THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION. PLEASE READ IT CAREFULLY, PRIOR TO SIGNING.

Plaintiff filed a complaint in February 2018, alleging violations of the Consumer Fraud Act (CFA), breach of contract and warranty, violation of the covenant of good faith and fair dealing, promissory estoppel, and civil conspiracy to commit a tort. She claimed she experienced "issues with the vehicle," which began as soon as her initial drive home from the dealership. The complaint alleged plaintiff was misled about the vehicle's condition, inspection, value, trade-in value, trade-in repair requirements and costs, and whether the vehicle had new tires. The complaint alleged that due to safety concerns, she could not use the vehicle.

The complaint also described defendants as two businesses, Elmwood Park Auto Mall and Esso Motor Cars, and asserted Igdalev was the owner and Shor the general manager. The complaint alleged Igdalev and Shor were

3

personally involved in the transaction, and Igdalev had been previously charged for defrauding consumers in used car transactions.

Defendants filed a motion to dismiss for failure to state a claim and compel arbitration. In his affidavit in support of the motion, Shor stated he owned Esso with another individual, but Igdalev "never had an ownership interest in Esso and was never employed by Esso." Igdalev made the same claim in an affidavit he signed and filed in support of the motion to dismiss.

The motion judge broached the subject of Igdalev's involvement in the business during oral argument of defendants' motion to dismiss. The following colloquy occurred:

> THE COURT: Is that wishful thinking, [plaintiff's counsel]? Were you thinking that this case would be a lot better if you had [Igdalev] involved . . . with the company?
>
> [PLAINTIFF'S COUNSEL]: No. I think he doesn't own it because he can't own it. He still runs the show, he still communicated with my client, he still came to my office trying to have me not file the lawsuit to begin with. So there's no question –
>
> THE COURT: Oh, but you don't want to be a witness in it. Are you going to have to get rid of the case . . . ?
>
> [PLAINTIFF'S COUNSEL]: I hope not.
>
> THE COURT: Well, did you know that? Did you know that Mr. Igdalev . . . came to [plaintiff's counsel?]

. . . .

> [DEFENDANTS' COUNSEL]: I found out about two minutes ago when we were chatting, Your Honor.

The judge denied defendants' motion. He found the wording in the arbitration clause "did not clearly and unambiguously signal to the parties in question, that 1) there was a waiver of a right to a jury trial, or to a lesser extent 2) that arbitration would be the only means of pursuing potential claims." The judge ruled it was not fair and equitable to compel arbitration against plaintiff as "an average member of the public" since she did not have "full knowledge that her legal right[] to bring a claim . . . was waived."

Additionally, the motion judge denied the motion to dismiss the individual defendants because the allegations contained in plaintiff's complaint regarding Igdalev's role, taken as true, would survive a motion to dismiss. Specifically, the judge made the following findings:

> Further, regarding the application of the arbitration clause, . . . Igdalev, on the other hand, claims via certification that his involvement in this matter is frivolous, as he has nothing to do with these car dealerships, and never has done business with the plaintiff. On the other hand, he seeks alternatively that claims against him be compelled to arbitration[.] . . . Those two positions are inconsistent. As such, this matter will not be compelled to arbitration as to any defendant.

This appeal followed.

I.

Appellate review of a trial court's ruling on a motion to dismiss is de novo. Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (citing Seidenberg v. Summit Bank, 348 N.J. Super. 243, 250 (App. Div. 2002)).  "A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'"  Ibid. (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)).  "This standard requires that 'the pleading be searched in depth and with liberality to determine whether a cause of action can be gleaned even from an obscure statement.'"  Ibid. (quoting Seidenberg, 348 N.J. Super. at 250); see also Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).

The validity of an arbitration agreement is a question of law, and therefore, we review the order to compel arbitration de novo.  Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1—16, and the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -32, reflect federal and

state policies that favor arbitration of disputes. The FAA "preempts state laws that single out and invalidate arbitration agreements." Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (citing Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996)). Therefore, a court "cannot subject an arbitration agreement to more burdensome requirements than other contractual provisions." Ibid. (quotations and citations omitted). However,"[a]rbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 441 (2014) (citing Hirsch, 215 N.J. at 187).

Our Supreme Court has stated:

> An agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law." NAACP of Camden Cty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div. 2011)[.] . . .
>
> . . . .
>
> Mutual assent requires that the parties have an understanding of the terms to which they have agreed. "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Knorr v. Smeal, 178 N.J. 169, 177 [] (2003) (citing W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 153 [] (1958)). "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." Foulke, 421 N.J. Super. at 425 []. But an average

7

member of the public may not know — without some explanatory comment — that arbitration is a substitute for the right to have one's claim adjudicated in a court of law.

Moreover, because arbitration involves a waiver of the right to pursue a case in a judicial forum, "courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." Ibid.

. . . [U]nder New Jersey law, any contractual "waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously" to its terms. [Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)]; see, e.g., Dixon v. Rutgers, the State Univ. of N.J., 110 N.J. 432, 460-61 [] (1988) (holding that collective bargaining agreement cannot deprive one of statutory rights to evidentiary materials in [an] anti-discrimination case because "[u]nder New Jersey law[,] for a waiver of rights to be effective it must be plainly expressed")[.]

[Atalese, 219 N.J. at 442-43.]

If the meaning of an arbitration provision is ambiguous, it should be construed against the party who drafted the provision. Roach, 228 N.J. at 174 (citing Kieffer v. Best Buy, 205 N.J. 213, 224 (2011)).

On appeal, defendants argue the motion judge erred by not compelling arbitration because the arbitration provision clearly waived the right to bring any action in court, which clearly included plaintiff's right to a jury trial. Defendants also argue, regardless of Igdalev's status, any claims against him had

8

to be brought in arbitration because the arbitration provision covers all claims related to, or arising out of, the sale of the vehicle. We address these arguments in turn.

II.

As we noted, the motion judge found the contract unclear and ambiguous as to whether plaintiff had waived her right to a jury trial, let alone waived her right to assert her claims in court altogether. Our de novo review leads us to a different conclusion.

Although the arbitration language here did not specifically contain a provision regarding waiver of a jury trial, we conclude its explicit waiver of the right to "maintain a court action" would clearly include the right to a jury trial. Indeed, the arbitration provision explicitly stated court was not a forum for dispute resolution under the contract in at least three separate locations, which are noted as follows:

> AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION.
>
> . . . By agreeing to arbitrate the parties understand and agree that they are giving up their rights to maintain other available resolution processes, such as a court

action or administrative proceeding, to resolve their disputes. . . .

THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION. PLEASE READ IT CAREFULLY, PRIOR TO SIGNING.

We are satisfied the multiple references stating a party could not maintain a "court action" constituted sufficiently clear and unambiguous language advising plaintiff she could not seek a jury trial. See Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (upholding an arbitration clause stating the parties, by agreeing to arbitration, "waiv[ed] their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes.") For these reasons, we reverse the motion judge's decision that arbitration could not be compelled.

However, the question of whether the claims against Igdalev are also subject to arbitration is not as clear and require remand for further discovery and proceedings. As we noted, Igdalev joined in the motion to dismiss and swore in an affidavit that he did not "own, work, and [had] never owned or been employed by [defendants]" and had never "met, interacted, communicated or transacted any business with [p]laintiff." However, the colloquy during oral argument

showed Igdalev had some involvement in attempts to settle the dispute, which implicate him as having some ties to the business.

On appeal, defendants argue Igdalev, as a non-signatory to the agreement, came within the scope of arbitration "on the basis of agency principles." We decline to address this argument as it was not squarely raised before the motion judge. We "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Nevertheless, as the motion judge noted, Igdalev's role was unclear. Therefore, construing the allegations in the complaint in plaintiff's favor, as we must pursuant to Rule 4:6-2(e), the motion to dismiss cannot be granted as to Igdalev without further discovery. Indeed, if Igdalev is found to have no involvement regarding the business, he would not be subject to arbitration. For these reasons, we reverse and remand to the motion judge to permit discovery limited to Igdalev's role and for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4915-17T2