**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1718-17T3

ERIC INSELBERG and
INSELBERG INTERACTIVE, LLC,

     Plaintiffs-Appellants,

v.

FRANK BISIGNANO and
FIRST DATA CORPORATION,

     Defendants-Respondents.

_____

Argued December 12, 2018 – Decided March 12, 2019

Before Judges Koblitz, Ostrer and Currier.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4954-15.

Brian C. Brook argued the cause for appellants (Clinton Brook & Peed, attorneys; Brian C. Brook, of counsel and on the briefs).

Kevin H. Marino argued the cause for respondents (Marino, Tortorella & Boyle, PC, and Michael B. Carlinsky, R. Corey Worcester and Matthew A. Traupman (Quinn Emanuel Urquhart & Sullivan, LLP)

of the New York bar, admitted pro hac vice, attorneys; Kevin H. Marino, John A. Boyle, Michael B. Carlinsky, R. Corey Worcester and Matthew A. Traupman, on the brief).

PER CURIAM

Defendant Frank Bisignano loaned money to plaintiff Inselberg Interactive, LLC (Interactive) with plaintiff Eric Inselberg (Inselberg) as guarantor of the loan. The parties memorialized the terms of the loan in an agreement. As collateral, defendant took a security interest in certain patents Inselberg owned. After plaintiffs defaulted on the loan, the parties executed an assignment agreement, in which plaintiffs assigned the patents to defendant "in partial payment and satisfaction of the indebtedness." In this appeal, we are asked to determine whether the assignment agreement was a valid strict partial foreclosure. After our de novo review of the record and applicable principles of law, we conclude the agreement between the parties effected a strict partial foreclosure under N.J.S.A. 12A:9-620 and affirm.

Interactive, owned by Inselberg, was created to provide marketing services for business technology invented by Inselberg. After patenting the technology, Inselberg transferred the patents to Interactive.

In 2010, defendant loaned $500,000 to Interactive. Inselberg, who was the guarantor on the loan, secured it with certain patents and sports memorabilia

he owned. Inselberg was indicted for mail fraud in 2011, and Interactive defaulted on the loan. No payments were ever made on the loan, and despite defendant extending the time for plaintiffs to cure the default, plaintiffs were still unable to satisfy the loan.

As a result, in January 2013, the parties entered into an assignment agreement. This agreement assigned the patents to defendant in partial payment and satisfaction of the loan. Specifically, it stated:

> Interactive wishes to transfer, convey and assign all of its right, title and interest in and to the [patents] in partial payment and satisfaction of the indebtedness and other obligations under the Loan Agreement and the other Loan Documents and Bisignano is willing to accept such [p]atents in partial payment and satisfaction of the indebtedness and other obligations under the Loan Agreement and other Loan Documents. . . .

Interactive also "waived in full" any obligation to transfer the patents back to Inselberg and any right to a "realization of proceeds" related to the patents. The parties established April 2, 2012, as the date of plaintiffs' default, and under the agreement, Interactive transferred and assigned "a complete and unconditional transfer" of the patents to defendant.

The indictment against Inselberg was dismissed in April 2013. In the following months, Inselberg demanded the return of the patents, and claimed the

value of the sports memorabilia held by defendant exceeded the amount due under the loan.

After defendant's appointment as CEO of defendant First Data Corporation (First Data), Inselberg alleged First Data was using his patented technology without a license, and he demanded First Data purchase either the patents or an exclusive license to them. Shortly thereafter, defendant granted First Data a license to use, or sell the patented technology, without requiring royalties for their use.

In a ten-count complaint filed in December 2015, plaintiffs asserted the breach of specific provisions of the Uniform Commercial Code (UCC) and common law duties, a declaration of the invalidity of the assignment agreement, and allegations that First Data was liable for defendant's underlying breaches of the UCC and common law duties. Plaintiffs sought monetary damages for royalties from the transfer of its patents to First Data and an alleged diminution of the patents' value.[1]

---

[1] Defendants did not dispute the allegations in the complaint that a specific email conversation with Inselberg was not an enforceable settlement agreement. Plaintiffs also alleged a conversion claim regarding the sports memorabilia. As defendants agreed to return all of the sports memorabilia under the final order, it contends both counts are moot.

4

Defendants filed an answer and counterclaim and requested removal to federal court. Plaintiffs filed two motions in response: 1) to dismiss for lack of subject matter jurisdiction and 2) to dismiss defendants' counterclaims. These motions were granted, and the matter was remanded to state court. Thereafter, defendants moved for dismissal of the complaint under Rule 4:6-2(e), arguing the assignment agreement was a strict foreclosure under N.J.S.A. 12A:9-620(c)(1).

In a written statement of reasons issued January 23, 2016, the trial judge found a valid loan agreement. The judge reasoned the subsequent assignment agreement transferring the patents was a valid strict foreclosure under N.J.S.A. 12A:9-620(a) and (c) because it established the necessary record authenticated after default, and plaintiffs consented to defendant's acceptance of the collateral as partial satisfaction of plaintiffs' obligation under the loan agreement.

Despite its conclusion, however, the court declined to dismiss the complaint, finding the assignment agreement contained "no agreed upon value for the partial satisfaction" of plaintiffs' debt. The trial court directed the parties to engage in discovery to determine the value of the patents and how much should be applied to plaintiffs' outstanding debt.

A-1718-17T3

The parties disagreed as to the scope of the ordered discovery, prompting the trial judge to issue a clarification on October 5, 2017. The clarification stated:

> The court did not "deny in entirety" [d]efendants' motion. Clearly, the statement of reasons provided, at a minimum, the "partial grant" of [d]efendants' motion, limiting the [p]laintiffs' recovery to any excess value greater than $500,000 that valuation of the collateral may produce. Thus, discovery will be limited to VALUATION of patents and sports memorabilia and nothing more.

Following a conference with the trial judge later that month, defendants submitted a proposed final order (final order) dismissing plaintiffs' claims with prejudice. Plaintiffs consented to the form of the order, but not its entry. The October 27, 2017 final order stated: 1) the assignment agreement "effectuated a valid strict partial foreclosure"; 2) the patents value was "at least $557,733.56 (the amount of the [l]oan plus interest)"; 3) defendants had to return the sports memorabilia; and 4) defendants' counterclaims were dismissed with prejudice.

On appeal, plaintiffs contend: 1) the value of collateral in the assignment agreement is an "essential" requirement of a strict foreclosure and, as the assignment agreement lacked any value, it was invalid; 2) the assignment agreement was not executed in good faith; and 3) because the trial court found discovery was needed to determine the patents' value, there was no strict

6

foreclosure. In response, defendants assert the assignment agreement satisfied all of the requirements to establish a strict foreclosure under N.J.S.A. 12A:9-620, and there is no provision under the UCC or other New Jersey law requiring the assignment agreement to specify the amount of debt subject to discharge.

We review the final order de novo, applying the same standard under Rule 4:6-2(e) that governed the trial court. See Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016); see also Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010). Our review "is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). If "the fundament of a cause of action may be gleaned even from an obscure statement of claim," then the complaint should survive this preliminary stage. Ibid. (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Strict foreclosure is a creditor's remedy for a debtor's default "by which the secured party acquires the debtor's interest in the collateral without the need for a sale or other disposition." UCC § 9-620 cmt. 2; see also N.J.S.A. 12A:9-620 cmt. 2.[2] N.J.S.A. 12A:9-620(a) addresses strict foreclosure, allowing a

---

[2] New Jersey adopted the UCC in part "to make uniform the law among the various jurisdictions." N.J.S.A. 12A:1-103(a)(3). The New Jersey statute is identical to the UCC and we therefore only refer to the New Jersey statute.

secured creditor to "accept collateral in full or partial satisfaction of the obligation it secures" if the debtor consents to the acceptance or does not object within a time certain. Section 620 "does not impose any formalities or identify any steps that a secured party must take in order to accept collateral" if the debtor consents to the acceptance or does not object within a time certain. See N.J.S.A. 12A:9-620 cmt. 6.

"[A] debtor consents to an acceptance of collateral in partial satisfaction of the obligation it secures only if the debtor agrees to the terms of acceptance in a record authenticated after default." See N.J.S.A. 12A:9-620(c)(1). A "record" is information inscribed on any tangible medium or stored in any other medium and retrievable in tangible form. See N.J.S.A. 12A:9-102(a)(69). "Authenticate" is to sign, or otherwise adopt a record with the present intent of adopting or accepting the record. See N.J.S.A. 12A:9-102(a)(7).

Once the debtor consents to the acceptance of collateral in partial satisfaction of the obligation it secures, the acceptance: 1) "discharges the obligation to the extent consented to by the debtor"; 2) "transfers to the secured party all of a debtor's rights in the collateral"; and 3) "terminates any other subordinate interest." See N.J.S.A. 12A:9-622(a)(1), (2), (4). Once the collateral has been accepted, it is transferred to the creditor.

A-1718-17T3

We are satisfied the trial judge correctly determined the assignment agreement constituted a strict partial foreclosure. First, the parties executed the assignment agreement after plaintiffs defaulted on the loan. See N.J.S.A. 12A:9-620(c)(1). Second, the agreement is written, meeting the "record" requirement. See N.J.S.A. 12A:9-102(a)(69). Third, the agreement is authenticated as defendant and plaintiffs signed the document. See N.J.S.A. 12A:9-620(c)(1); see also N.J.S.A. 12A:9-102(a)(7). Finally, the agreement stated that Interactive intended to convey and assign all of its interests in the patents in partial payment and satisfaction of the debt. The language in the assignment agreement expressly stated that defendant, as the secured party, accepted the collateral in partial satisfaction of plaintiffs' obligation, and that plaintiffs consented to the acceptance in partial satisfaction. For those reasons, the assignment agreement fulfills New Jersey's requirements for a strict foreclosure.

Plaintiffs' assertion that the assignment agreement is invalid because there was no determination of the value of the collateral is without support in New Jersey law. As stated, under N.J.S.A. 12A:9-622(a)(1), when a debtor consents to a secured party's acceptance of collateral in partial satisfaction of the obligation, it "discharges the obligation to the extent consented to by the debtor."

9

Here, plaintiffs, as debtors, consented to defendant creditor accepting the collateral in partial satisfaction of the obligation in the assignment agreement.

We further note that the secured creditor's acceptance of the collateral is automatic, requiring no further action. The secured party's agreement to accept collateral is self-executing and the secured party is bound by its agreement to accept the collateral. N.J.S.A. 12A:9-620, cmt. 6.

In defendant's agreement to accept the collateral, and plaintiffs' consent to the acceptance, defendant became the owner of the patents upon the execution of the assignment agreement. No further action was needed. As established under the final order, the debt has been satisfied as defendant agreed to assign the value of the loan and accrued interest as the value of the patents. Therefore, it was not necessary to address the valuation of the patents.

Because the assignment agreement effected a strict foreclosure, plaintiffs' rights and interests in the patents were extinguished. As a result, the complaint cannot sustain a cause of action, and the final order dismissing plaintiffs' claims was appropriate under Rule 4:6-2(e).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

10                                                                A-1718-17T3