**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0610-18T3

LAWRENCE B. LITWIN,

     Plaintiff-Appellant,

v.

BMW FINANCIAL SERVICES
CORPORATION and BMW OF
MORRISTOWN, INC.,

     Defendants-Respondents.

_____

Submitted November 13, 2019 – Decided December 5, 2019

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1484-18.

Biebelberg & Martin, attorneys for appellant (Keith Nelson Biebelberg and Jay Nimaroff, on the briefs).

Saul Ewing Arnstein & Lehr LLP, attorneys for respondent BMW Financial Services (Ryan Lawrence Di Clemente and Colleen K. Fox, on the brief).

Methfessel & Werbel, attorneys for respondent BMW of Morristown, Inc. (Paul John Endler, Jr., and Jason Daniel Dominguez, on the brief).

PER CURIAM

Plaintiff leased a vehicle from defendants for thirty-six months.[1] Twenty-five months into the lease, plaintiff underwent hip surgery. When his physician recommended he not drive the leased vehicle, plaintiff approached defendants about an early termination of the lease and was informed of the costs. He decided to retain the vehicle, made the remaining payments "under protest," and returned the vehicle when the lease term expired.

Plaintiff then commenced this action, alleging a violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, and asserting other common law claims. Defendants successfully moved for dismissal, and plaintiff appeals, arguing in three points that the motion judge: erroneously applied Rule 4:6-2(e) in this "matter of first impression"; failed to view the complaint with "broadness and liberality"; and mistakenly read the complaint "too narrowly." We find insufficient merit in these arguments to warrant further discussion in a written opinion and affirm. R. 2:11-3(e)(1)(E). We add a few additional comments.

---

[1] The record doesn't provide an understanding of the differences in the roles played in this transaction between these two defendants. For present purposes only, we assume they are both parties to the lease agreement.

Faced with a motion to dismiss for failure to state a claim, a judge must assume the truth of the allegations and provide plaintiff with all reasonable inferences. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). The complaint must be searched "in depth and with liberality" to ascertain "whether a cause of action can be gleaned even from an obscure statement." Seidenberg v. Summit Bank, 348 N.J. Super. 243, 250 (App. Div. 2002). We apply the same standard when reviewing a Rule 4:6-2(e) dismissal. Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010).

In pleading a CFA claim, it is not enough for a plaintiff to allege the defendant refused to release him from a contract. A contracting party does not act unconscionably or fraudulently when insisting the other contracting party adhere to a contract that was neither induced through a fraudulent practice nor is itself unconscionable within the meaning of the CFA.

Plaintiff has not alleged – beyond a conclusory assertion – that he was induced to enter into the lease by fraud or an unconscionable business practice. His argument instead focuses on the lease's early termination provisions and the contention that these provisions represent an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation," or that the lease somehow "conceal[ed]," "suppress[ed]," or "omi[tted]" a "material

3

fact" relevant to the lease's early termination. N.J.S.A. 56:8-2. To support these broad contentions, plaintiff argues that the two early termination provisions are "contradictory" and "confusing." Even when the lease is viewed in the light most favorable to plaintiff, we discern no contradiction or confusion.

The first of the two – paragraph 10 – is titled "Early Termination" and expresses the parties' general understanding about early termination (the stipulation is phrased from the lessor's standpoint):

> I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

On its face, paragraph 10 only introduces the notion that the lessor may not end the lease without a financial cost; it is only a starting point to a further discussion or the lessee's means of conveying to the lessor that there is a cost to terminating the lease earlier than agreed. Paragraph 10 clearly makes no attempt to define what that cost might be, leaving the details to paragraph 33, which is indeed detailed and is extensively quoted below.[2]

---

[2] Paragraph 33 allows for an early termination "at any time" by the lessor's purchase of the vehicle. Otherwise, a lessor may terminate early by "choos[ing] one of [two] options"; like paragraph 10, paragraph 33's options are expressed from the lessor's standpoint:

(continued)

A-0610-18T3

Plaintiff's CFA claim is not based on some actual contradiction between or among paragraph 33's options and multi-faceted formulae. And we see nothing in plaintiff's allegations that asserts or suggests that these consequences and the available options are unfair or unconscionable within the meaning of N.J.S.A. 56:8-2. Plaintiff's contention is that paragraph 10 states that the lessor's

---

Option A. I agree to pay the sum of: (1) all remaining Monthly Payments; plus (2) any past due Monthly Payments; plus (3) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amount needed to satisfy my obligations under this Lease; plus (4) any Excess Wear and Use and Mileage Charges; plus (5) a $350 Disposition Fee.

Option B. I agree to pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) a $350 Disposition Fee; plus (4) the amount by which the Adjusted Lease Balance (explained below) exceeds the Realized Value of the Vehicle (Section 34). However, should my Early Termination Liability calculated under this Option exceed what I would have owed had I selected Option A, you will waive the difference and my liability will be capped at Option A.

The provision goes on to authorize the lessee's application of the lessor's security deposit to whatever is or will be owed, and further stipulates that the lessor "will remain liable for personal property taxes" while also defining the manner in which they will be computed.

5

A-0610-18T3

cost in terminating early "may" amount to "several thousand dollars" and paragraph 33 provides formulae for computing that cost. The argument that the two paragraphs are contradictory or inconsistent is simply without merit.

Plaintiff also contends that the lease is unconscionable or fraudulent because it does not expressly state that, on an early termination, the lessee would have an obligation to attempt to release or sell the vehicle to mitigate the lessor's damages. To the extent a duty to mitigate would attach to such a contract, cf., McDonald v. Mianecki, 79 N.J. 275, 299 (1979), that duty arises by operation of the common law, just like the implied duty of good faith and fair dealing, which silently attaches to all New Jersey contracts, Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997); Seidenberg, 348 N.J. Super. at 253. A contracting party's failure to express a term implied by law does not represent a concealment or omission of a material fact.

We lastly observe that when granting a Rule 4:6-2(e) dismissal, the motion judge should normally provide the pleader with an opportunity to amend. See Liberty Mut. Ins. Co. v. Garden State Surgical Ctr., LLC, 413 N.J. Super. 513, 524 (App. Div. 2010); Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009). But it was not the manner in which plaintiff expressed his claims that brought about dismissal. The complaint was dismissed because

of the insufficiency of the theories underlying his allegations.  Having examined plaintiff's legal theories – and found them wanting – we conclude that allowing an amended complaint to restate those theories would be futile.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0610-18T3